WALKER and BROWN, JJ., dissenting.
Action for the recovery of damages for personal injuries, alleged to have been caused by the negligence of the defendant.
The plaintiff's evidence tended to show — the defendant not having introduced any evidence — that the plaintiff, a white man about 35 years old, with one Hagan, drove a mule, hitched to a buggy in which they *Page 286 
were riding, into the town of Parkton, about 2 o'clock in the afternoon of 26 January, 1914. Desiring to go on the east side of the defendant's track, they found some of the street crossings blocked by a freight train. The plaintiff got out of the buggy and walked around the train, and, after transacting certain business, came back to the buggy. They then drove to the upper northernmost crossing, and, finding that one blocked, drove down a street parallel to and fifteen feet from the train for a distance of about four hundred yards, with the purpose of going to a lower crossing, which was not blocked. Just as they reached the engine — the train being headed south — steam came out from under the engine and the wheels began to turn, scaring the mule, causing him to run away, and plaintiff was thrown out of the buggy, suffering injuries.
There was no evidence that the escaping steam was unusual or extraordinary, or that the escape was permitted willfully or wantonly, and the noise and escape of the steam was usual and ordinary in the starting of a train. There was in evidence an ordinance of the town of Parkton which provided a penalty for a railroad to block the streets for more than five minutes, and also evidence that the streets had been blocked for a longer time than five minutes.
The defendant introduced no evidence and moved for judgment as in case of nonsuit. This motion was overruled and defendant excepted. There was a verdict and judgment for the plaintiff, and the defendant appealed.
It is established by the evidence that the defendant blocked a public crossing in the town of Parkton with a train of cars in violation of the ordinance of the town, and this is negligence; but a plaintiff cannot recover upon proof of negligence alone. He must go further and show that the negligence complained of is the proximate cause of his injury. Ledbetter v. English, 166 N.C. 125; McNeill v. R. R.,167 N.C. 390. The real controversy, therefore, between the plaintiff and the defendant on the issue of negligence, raised by the motion for judgment of nonsuit, is whether there is any evidence that the (232) negligence of the defendant in violating the ordinance of the town was the proximate cause of the injury.
Much of the difficulty in the application of the doctrine of proximate cause arises from the effort on the part of the courts to give legal definition to what is essentially a fact, and, in most cases, for the determination of a jury, but perhaps the most complete and accurate statement of the rule is to be found in the oft quoted opinion of Mr.Justice Strong *Page 287 
in R. R. v. Kellogg, 94 U.S. 469. He says: "The true rule is, that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of the fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or, as in the oft cited case of the squib thrown in the market place. 2 Bl. Rep., 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? . . . We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. . . . In the nature of things there is, in every transaction, a succession of events more or less dependent upon these preceding, and it is the province of the jury to look at this succession of events or facts and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."
Again, the same judge says in Insurance Co. v. Boone, 95 U.S. 117; "The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in time and place. The inquiry must always be whether there was an intermediate cause disconnected from the primary fault and self-operating, which produced the injury."
In Harvell v. Lumber Co., 154 N.C. 261, this statement of the law was approved, the Court saying: "Proximate cause means the dominant, efficient cause, the cause without which the injury would not have occurred; and if the negligence of the defendant continues up to the time of the injury, and the injury would not have occurred but for (233) such negligence, it is not made remote because some act, not within the control of the defendant, and not amounting to contributory negligence on the part of the plaintiff, concurs in causing the injury."
Another definition of the term is that given by Shearman and Redfield on Negligence, sec. 26, and approved in Harton v. Telephone Co., *Page 288 141 N.C. 455, and in Ward v. R. R., 161 N.C. 184, that "The proximate cause of an event must be understood to be that which, in natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which such event would not have occurred. Proximity in point of time and space, however, is no part of the definition."
If either of these authorities is followed the question of proximate cause was for the jury, because the "facts constitute a continuous succession of events so linked together as to make a natural whole"; the escape of steam was not "disconnected from the primary fault," but operating with it; the negligence of the defendant in violating the ordinance was "the cause without which the injury would not have occurred."
The defendant contends, however, that these principles have no application to this case because, he says, the evidence shows that there was a new intervening cause, the escape of the steam, which was not negligent, and that this was the real cause of the injury to the plaintiff. There are two answers to this position. The first is, that the escape of the steam did not intervene between the negligence of the defendant and the injury to the plaintiff, but was concurrent. The train of the defendant was still blocking the crossings in violation of the ordinance of the town at the time the steam escaped, and the negligence of the defendant was then existing and operating.
The second is, that the escape of the steam was the act of the defendant and, while innocent within itself, was associated and connected with the negligence of the defendant, and was permitted by the defendant with a knowledge of the conditions surrounding the plaintiff.
Some of the authorities hold that no cause can operate as an intervening cause and thereby insulate the previous negligence of the defendants unless it is wrongful (Shearman and Redfield on Negligence, sec. 36), but the better rule and the one generally adopted is that to have this effect it must be disconnected from the negligent act, and must be a cause which could not be reasonably foreseen or anticipated. Harton v.Telephone Co., 141 N.C. 455; Ward v. R. R., 161 N.C. 183; 29 Cyc., 499; R. R. v. Renny, 42 Md. 137; Shippers Co. v. Davidson,35 Tex. Civ. App. 561; R. R. v. Webb, 116 Ga. 152; Pastene v. Adams,49 Cal. 87; Grimes v. R. R., 3 Ind. App. 576;Chacy v. City of Fargo, 5 No. Dak., 176; Osburn v. Vandyke,113 Iowa 558; Cornelius v. Huttman, 44 Neb. 447;Gas Co. v. Getty, 96 Md. 685.
As illustrating the rule, it was held in the Gas Co. case that one who had put a defective gas pipe in a house was liable for an injury caused by an explosion which was brought about by a policeman going in with a lighted candle to investigate; in the Osburn case, that one who was wrongfully beating a horse when his foot slipped, causing him *Page 289 
to miss his blow and strike the plaintiff, was liable; in the City of Fargocase, that the city was liable to one injured by a hole in the street across which there was a plank, and where the injury was caused by one riding a bicycle striking the plank as the plaintiff passed, thereby injuring him; and, in the case from Georgia, that the plaintiff was entitled to recover damages against a railroad company which, by its negligence, had caused him to be thrown from a train on which he was a passenger, thereby throwing him upon a track where he was injured by a train of another company using the track without negligence on its part.
The cause of R. R. v. Renny, 42 Md. is particularly pertinent to the position that the defendant cannot by its own act relieve itself from the consequences of its negligence.
The Court says in that case: "In the application of the maxim, In jurenon remota causa sed proxima spectatur, there is always more or less difficulty, and attempts are frequently made to introduce refinements that would not consist with principles of rational justice. The law is a practical science, and courts do not indulge refinements and subtleties as to causation that would defeat the claims of natural justice. They rather adopt the practical rule, that the efficient and predominating cause in producing a given event or effect, though there may be subordinate and dependent causes in operation, may be looked to in determining the rights and limitations of the parties concerned. . . . But it is equally true that no wrongdoer ought to be allowed to apportion or qualify his own wrong, and that, as a loss has actually happened whilst his wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss if that cause was put in operation by his own wrongful act."
The case from Texas is in principle practically identical with the one before us. In that case the defendant had obstructed a street by erecting a gangway thereon, leaving a space for the passage of vehicles, and a horse of the plaintiff, while he was driving along the street, was frightened by the noise made by an employee in rolling cotton upon the gangway, and ran away and seriously injured the plaintiff. The objection was made to a recovery that the gangway did not cause the injury and that the noise made by the employee was an intervening proximate cause, but the Court said: "The act of moving the truck rapidly down the gangway, producing the noise that frightened the horse, was inseparably connected with the unlawful structure. It required the gangway as well as the moving of the truck to produce the result. (235) They were active concurring forces producing the result. The intervening act of the negro in rolling the truck immediately behind the *Page 290 
buggy and frightening the horse did not supersede the original unlawful act in putting the obstruction in the street."
If these principles are applied to the evidence, we are of opinion that there was no intervening cause and that the motion for judgment of nonsuit was properly denied, and if we discard legal definition, and take a practical, reasonable view of the evidence, the same conclusion will be reached.
If you were to ask a reasonably intelligent person, "Would the plaintiff have been injured but for the escape of steam?" he would answer "No," but if you asked the same person, "would he have been injured if the defendant had not negligently blocked the crossing?" he would give you the same answer, and this would seem to demonstrate that the concurrence of the two acts of the defendant (one negligent and the other within itself innocent) caused the injury, and, if so, the defendant cannot escape liability unless the plaintiff was guilty of contributory negligence. "Negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes other than plaintiff's fault, is the proximate cause of the injury." 29 Cyc., 497.
The negligence of the defendant continued and was in operation up to the very time of the injury, and, not only could the defendant have reasonably foreseen and anticipated what did occur, but it had actual knowledge of conditions up to the time the mule began to run.
It knew that it was violating an ordinance and, therefore, guilty of negligence; that the plaintiff, in the exercise of a right, had approached the crossing and was endeavoring to pass; that he was prevented from doing so by its negligent act; that he was trying to extricate himself from the condition and situation produced by the defendant; that he was passing the engine in his effort to do so, and that it was permitting the steam to escape from its engine in the direction of the mule, which was not more than ten or fifteen feet distant, and the only facts which it did not know were that the mule would run away and that the plaintiff would be thrown out, and it was the jury to say whether this result could be reasonably anticipated.
The rule is not that the particular injury must be foreseen or anticipated, but that some injury may follow the wrongful act. Drum v.Miller, 135 N.C. 213.
The question of contributory negligence was submitted to the jury under proper instructions, and it could not have been declared as matter of law under the evidence in the record. Dunn v. R. R., 126 N.C. 343. *Page 291 
There are several exceptions taken by the defendant, but the (236) principles we have discussed cover all of them that are relied on in the defendant's brief.
No error.
WALKER and BROWN, JJ., dissenting.
Cited: Lutterloh v. R. R., 172 N.C. 118 (4p); Taylor v. Stewart,172 N.C. 204, 205 (3f, 4p); Hinton v. R. R., 172 N.C. 589 (3p); Taylorv. Lumber Co., 173 N.C. 115 (2f, 3f); Lea v. Utilities Co., 175 N.C. 464
(2f, 3f); Ridge v. High Point, 176 N.C. 424 (2f, 3f, 4p); Mfg. Co. v.Hester, 177 N.C. 613 (2f, 3f, 4p); Stultz v. Thomas, 182 N.C. 473 (3f);Graham v. Charlotte, 186 N.C. 666, 667 (3f, 4p); Ramsey v. Oil Co.,186 N.C. 740 (4p); Hinnant v. Power Co., 187 N.C. 295 (3f); DeLaney v.Henderson-Gilmer Co., 192 N.C. 651 (3f); R. R. v. Maxwell, Comr. ofRevenue, 207 N.C. 746 (3f, 4p).